[Cite as *W.W. v. C.G.*, 2026-Ohio-2485.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

W. W.

    Appellant

    v.

C. G.

    Appellee

C.A. No.     2025CA0056-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.     2024CS0034

DECISION AND JOURNAL ENTRY

Dated: June 30, 2026

---

HENSAL, Presiding Judge.

{¶1} W.W. appeals an order of the Medina County Court of Common Pleas that denied his petition for a civil stalking protection order ("CSPO"). This Court affirms.

I.

{¶2} W.W. and C.G. are next-door neighbors, but their relationship is fraught with conflict. W.W. sought a civil stalking protection order alleging that C.G.'s use of a drone, surveillance cameras, lawn-care machinery, and other "nuisance activities" were interfering with his "ability to enjoy and use" his property. W.W. also maintained that he could not use his front yard because of "the risk [of] [C.G.] engaging in provoking behavior to distract, harass, annoy, and/or anger" him. After a full hearing, a magistrate denied the petition, concluding that although "[t]here is little doubt" that W.W. finds C.G.'s actions "both annoying and bothersome," the evidence did not demonstrate that C.G. caused mental distress to W.W. In the alternative, the magistrate concluded that even if W.W. suffered mental distress, C.G. did not knowingly cause it.

The trial court adopted the magistrate's decision, and W.W. filed an objection arguing that the weight of the evidence did not support the magistrate's decision. The trial court overruled his objection, and W.W. appealed, assigning three errors for this Court's review.

II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN FINDING THERE WAS INSUFFICIENT EVIDENCE THAT APPELLEE KNOWINGLY CAUSED APPELLANT MENTAL DISTRESS.

### ASSIGNMENT OF ERROR II

THE TRIAL COURT'S FINDINGS OF FACT WERE INACCURATE AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶3} Although framed as a challenge to the sufficiency of the evidence supporting the trial court's decision, W.W.'s first assignment of error challenges the credibility of the evidence. Both his first and second assignments of error, therefore, argue that the trial court's conclusion that he did not suffer mental distress is against the manifest weight of the evidence. This court does not agree.

{¶4} When a party challenges a protection order on the grounds that it is against the manifest weight of the evidence, this Court

> "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."

(Internal citations omitted and alterations in original.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist. 2001). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the judgment. *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986), citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

{¶5}    Revised Code Section 2903.214(C) permits an individual to petition for a protection order based on an allegation that the respondent committed a violation of Section 2903.211, which prohibits menacing by stalking, against the petitioner.   The purpose of Section 2903.211 and Section 2903.214(C) is "to prevent the type of persistent and threatening harassment that leaves victims in constant fear of physical danger[] or mental distress." *Wheeler v. Armbruster*, 2023-Ohio-3840, ¶ 24 (6th Dist.), quoting *Krzystan v. Bauer*, 2017-Ohio-858, ¶ 2 (6th Dist.).  Section 2903.214(C) forms "an important part of the overall legislative scheme that is designed to allow the police and the courts to act before a victim is harmed by a stalker." *Lindsay v. Jackson*, 2000 WL 1268810, *2 (1st Dist. Sept. 8, 2000).  *See also Hamlin-Scanlon v. Taylor*, 2008-Ohio-411, ¶ 11 (9th Dist.).

{¶6}    "In order for a civil stalking protection order to issue, the trial court must find that the petitioner has shown by a preponderance of the evidence the respondent committed an act against the petitioner that would constitute menacing by stalking." *A.S. v. P.F.*, 2013-Ohio-4857, ¶ 6 (9th Dist.).  Section 2903.211(A)(1) provides that "[n]o person by engaging in a pattern of conduct shall knowingly cause another person to believe that the offender will cause physical harm to the other person . . . or cause mental distress to the other person. . . ."  The Supreme Court of Ohio has explained that Section 2903.211(A)(1) unambiguously requires "that a petitioner need not show that he has suffered actual mental distress – but only a belief that the respondent will cause him mental stress – to obtain a civil stalking protection order." *Z.J. v. R.M.*, 2025-Ohio-5662, ¶ 46. *But see id.* at ¶ 72 (Kennedy, C.J., dissenting) ("But in practice, such a belief is not susceptible of proof.").

{¶7}    Mental distress means "[a]ny mental illness or condition that involves some temporary substantial incapacity" or "[a]ny mental illness or condition that would normally require

psychiatric treatment, psychological treatment, or other mental health services. . . ." R.C. 2903.211(D)(2). A substantial incapacity is one that significantly impacts the victim's daily life. *M.B. v. L.D.*, 2023-Ohio-3560, ¶ 16 (9th Dist.), quoting *State v. Willett*, 2012-Ohio-1027, ¶ 10 (9th Dist.). Explicit threats are not required, and the question is whether the respondent, by engaging in a pattern of conduct, knowingly caused the petitioner to believe that the respondent would cause mental distress to him or her in the future. *See id*. at ¶ 15; *Z.J.* at ¶ 46. This Court has observed that "[m]ere mental stress or annoyance" does not fit within this definition. *E.B. v. J.B.*, 2021-Ohio-776, ¶ 13 (9th Dist.), quoting *W.B. v. T.M.*, 2020-Ohio-853, ¶ 10 (9th Dist.).

{¶8} W.W. explained that the behavior underlying his petition consisted of C.G.'s daily use of lawn care equipment, his recreational use of a drone, and the presence of security cameras that point in the direction of W.W.'s house. He explained that the noise emitted from the lawn care equipment and the drone is noticeable in his house, and he testified that he "perceive[s] [the drone activity] is spying and harassing." W.W. also testified that he is reluctant to use his front yard because of C.G.'s security cameras. He also noted that C.G. parks a van in his driveway and noted that it makes a loud beeping sound when being driven in reverse. W.W.'s fiancé also testified that on one occasion, C.G. backed into their driveway early in the morning while turning around.

{¶9} C.G. acknowledged that he uses lawn care equipment on a daily basis within certain hours, and he explained that he did so because he prioritized having an attractive lawn and because he finds lawn maintenance to be relaxing. He also described the methods and reasons for the tasks that he undertakes without reference to W.W. In addition to his personal use of lawn care equipment, C.G. testified that he occasionally sells items through social media and tests them beforehand, although he explained that he had sold fewer items in the previous months. C.G.

acknowledged that he uses a drone recreationally to photograph landscaping. He described the efforts that he took to ensure that his use was safe and in compliance with the law and, again, he did so without reference to W.W. According to C.G., he has received no complaints from other neighbors about the drone. C.G. also testified that he owns security cameras that point in the direction of W.W.'s house for safety reasons because, in their absence, a vehicle had been stolen from his own adjacent driveway. C.G. testified that W.W. had called the police to report his behavior on numerous occasions, but that none of the reports had resulted in further action. He also testified that W.W. had been recording his behavior with increasing frequency and, from his perspective, had been attempting to instigate a confrontation. According to C.G., W.W. records him every time he goes outside.

{¶10} J.B., who lives on the other side of the street several houses away from W.W. and C.G., testified that as the president of the homeowner's association, she has not received any complaints about C.G. She noted that other residents of the neighborhood do lawn work on a constant basis, and she observed that C.G.'s activities were not out of the ordinary.

{¶11} W.W. also testified that he has been under "incredible stress" and that "it basically has consumed [his] life. . . ." He explained that he has lost sleep from the stress and has not been able to enjoy his family or his life. Notably, however, W.W. connected these effects not primarily to C.G. but to his own response. He testified that he has been systematically recording and photographing C.G.'s behavior, and that the burden of doing so to gather evidence in support of his petition left him unable to enjoy life. He explained that "constantly having to film, to collect evidence" has been "almost more than [he] can handle."

{¶12} W.W.'s testimony was based exclusively on his present experience of stress that he characterized as mental distress. He did not explain to what degree he believed that C.G. would

cause mental distress to him in the future, although "the issuance of civil stalking protection order is a determination that the protected person is at risk of future harm from the respondent." *K.N. v. Render*, 2019-Ohio-3981, ¶ 21 (9th Dist.). To the extent that present experience of mental distress remains relevant, however, W.W.'s evidence demonstrated that in response to the C.G.'s activity, he experienced stress and annoyance that did not rise the level required by Section 2903.214(C) and Section 2903.211(A)(1). A CSPO will not issue to "alleviat[e] uncomfortable situations." *Wheeler*, 2023-Ohio-3840, at ¶ 24 (6th Dist.), quoting *Krzystan*, 2017-Ohio-858, at ¶ 2 (6th Dist.). "[A] protection order is not appropriate merely because neighbors share unfriendly or untenable relationships." *J.A.C. v. A.L.*, 2022-Ohio-2275, ¶ 18 (8th Dist.).

{¶13} This is not the exceptional case in which evidence weighs heavily against the trial court's conclusion that the CSPO should not issue. *See J.B. v. Harford*, 2015-Ohio-13, ¶ 32 (9th Dist.). W.W.'s first and second assignments of error are overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED IN NOT ALLOWING APPELLANT TO IMPEACH APPELLEE IN CROSS-EXAMINATION.

{¶14} W.W.'s third assignment of error argues that the trial court erred by ignoring his argument that he should have been permitted to cross-examine C.G. about whether he flew the drone over W.W.'s property. This Court does not agree.

{¶15} When a magistrate grants or denies a protection order after a full hearing, the order that is entered is neither a "magistrate's order" nor a "magistrate's decision" under Rule 53(D). Civ.R. 65.1(F)(3)(b). Rule 65.1(F) does not impose a specificity requirement for objections, but it does describe the burden that the objecting party must meet. *See Robertson v. Park*, 2026-Ohio-388, ¶ 41 (12th Dist.). *Compare* Civ.R. 53(D)(3)(b)(ii) ("An objection to a magistrate's decision shall be specific and state with particularity all grounds for objection."). Specifically, Rule

65.1(F)(3)(d)(iii) explains that a party filing objections to a protection order "has the burden of showing that an error . . . is evident on the face of the order, or that the credible evidence of record is insufficient to support the granting or denial of the protection order, or that the magistrate abused the magistrate's discretion in including or failing to include specific terms in the protection order."

{¶16} W.W. argued a single objection: "The Magistrate did not reasonably weigh the evidence." In his description of the magistrate's decision that supported that objection, W.W. listed numerous ways in which, in his view, the magistrate erred in evaluating the evidence, without developing any as separate objections. One such observation related to his cross-examination of C.G., as referenced in this assignment of error. He did not, however, develop this argument as an objection showing that it was "an error of law or other defect [that] is evident on the face of the order." *See* Civ.R. 65.1(F)(3)(d)(iii). This Court cannot conclude that the trial court erred in the scope of its decision. Regardless, however, any error in this respect would be harmless. *See* Civ.R. 61. W.W.'s third assignment of error is overruled.

III.

{¶17} W.W.'s assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

––––––

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JENNIFER HENSAL
FOR THE COURT

SUTTON, J.
STEVENSON, J.
CONCUR.

APPEARANCES:

STEPHEN P. HANUDEL, Attorney at Law, for Appellant.

C. G., pro se, Appellee.